## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

XAVIER HARRIS,               )

           )

     Plaintiff,       )

           )

     v.           )     Civil Action No. 1:06CV01848 (JR)

           )

SAMUEL W. BODMAN,     )

SECRETARY OF ENERGY    )

           )

     Defendants.     )

_____)

## DEFENDANT'S MOTION TO DISMISS

Defendant Samuel W. Bodman, Secretary of Energy, hereby moves, to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter and failure to state a claim.  In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

A proposed Order consistent with the relief sought herein is attached.

Respectfully submitted,

___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

___/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| XAVIER HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06CV01848 (JR) |
| | ) | |
| SAMUEL W. BODMAN, | ) | |
| SECRETARY OF ENERGY | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Samuel W. Bodman, Secretary of Energy, hereby files this memorandum in support of his motion to dismiss, made pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).  Specifically, Defendant raises the following two arguments.  First, Plaintiff failed to comply with the 90-day statutory deadline for commencing his civil action.  Second, the Civil Service Reform Act, not this Court, provides the exclusive remedy for Plaintiff's whistleblower reprisal claim.

## BACKGROUND

Plaintiff Xavier Harris was formerly employed with the Department of Energy as a Utility Systems Repair Operator.  *Complaint at ¶5.*  On February 29, 2004, Plaintiff filed a formal administrative complaint of discrimination with the Agency's Office of Civil Rights and Diversity (OCRD).  *Complaint at ¶10.*  Plaintiff alleged discrimination on the bases of race, sex, and reprisal for prior EEO complaints when his Team Leader made racist comments creating a hostile work environment.  *Attachment 1 at pg 1.*  On January 17, 2006, the Agency sent a final Agency decision (FAD) to the Plaintiff finding, *inter alia*, that he failed to establish a prima facie

case of discrimination and that the Agency articulated legitimate non-discriminatory reasons for its actions. *Id. See also Complaint at ¶10*. The FAD advised the Plaintiff that he could appeal the decision to the Equal Employment Opportunity Commission ("Commission") within 30 calendar days. *Attachment 1 at pg 9*. The FAD further advised the Plaintiff that he had the right to file a civil action but that he had to do so within 90 calendar days. *Id.*

There is no indication that Plaintiff ever appealed this decision to the Commission. Instead, on October 27, 2006, over nine months after the issuance of the FAD, Plaintiff then filed the instant federal court complaint. *See Docket Entry 1*. Plaintiff alleges two causes of action: (1) race based discrimination and (2) violations of the Whistleblower Act. *Complaint at ¶5*. With regards to his latter claim of whistleblower reprisal, Plaintiff does not allege and the record does not demonstrate that Plaintiff ever filed a complaint with the Office of Special Counsel ("OSC") or an individual right of action appeal with the Merit Systems Protection Board ("MSPB").

## STANDARDS OF REVIEW

### I.      Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires plaintiffs to establish by a preponderance of the evidence that the court has jurisdiction to entertain their claims. *See Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (holding that, while the plaintiff has the burden of establishing the court's jurisdiction, the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority.") (citation omitted); *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 18 (D.D.C. 1998) (citations omitted). While the court must accept as true all the factual allegations

contained in the complaint when reviewing such a motion, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (citation omitted), the "plaintiffs' factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police*, 185 F. Supp. 2d at 13-14 (quotation omitted).  Finally, in deciding a 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint but may consider material outside of the complaint in an effort to determine whether the court has jurisdiction.  *Herbert v. Nat'l Acad. of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Johnson v. Quander*, No. 04-448 (RBW), 2005 U.S. Dist. LEXIS 5020, at *8-9, 2005 WL 670759 (D.D.C. Mar. 21, 2005) (citations omitted); *Carroll v. England*, 321 F. Supp. 2d 58, 64 (D.D.C. 2004); *Grand Lodge of the Fraternal Order of Police*, 185 F. Supp. 2d at 14 (citations omitted).

## II.    Rule 12(b)(6)

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint and, therefore, in deciding a motion to dismiss under Rule 12(b)(6), the Court must presume that the factual allegations in the complaint are true and liberally construe those factual allegations in favor of the plaintiff.  *See, e.g., Shear v. NRA*, 606 F.2d 1251, 1253 (D.C. Cir. 1979).  In addition, the court may consider certain additional evidence in deciding the motion.  *See Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the

complaint or essential to a plaintiff's claim which are attached to a defendant's motion."). Legal conclusions, assertions, or arguments in the complaint are not to be presumed true, liberally construed, or otherwise deferred to by the court. *See In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

## ARGUMENT

**I.      Plaintiff's Complaint Must Be Dismissed For Failing to Timely File Within 90 Days After Receipt of the Final Agency Decision**

"A person aggrieved under Title VII who seeks to file a civil action must do so within ninety days from receipt of the [Equal Employment Opportunity Commission's] right-to-sue notice." *Griffin v. Acacia Life Ins. Co.,* 151 F.Supp.2d 78, 80 (D.D.C.2001) (citing 42 U.S.C. § 2000e-5(f)(1) (2000); *Hogue v. Roach,* 967 F.Supp. 7, 8 (D.D.C.1997)). If a complaint is not filed within that time period, it may be dismissed as untimely. *See, e.g., Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 835 (1976) (dismissal of complaint as untimely was proper when plaintiff filed suit after Section 2000e-16(c)'s limitations period); *Tyler v. Henderson,* No. 00-0060, 2001 WL 194930 at *5 (D.D.C. Feb 22, 2001) (granting summary judgment for defendant when plaintiff failed to file suit within 90 days), *aff'd*, No. 01-5085, 2001 WL 1297501.

In the instant case, the Agency mailed the FAD to the Plaintiff on January 17, 2006. *Attachment 1*. A certified mail receipt from the United States Post Office shows that it was received on January 20, 2006. *Id. at pg 11*. Moreover, the FAD advised the Plaintiff of his various appeal rights and the corresponding deadlines for exercising those appeals rights. *Id. at pg 9-10*. Plaintiff was fully apprized and aware that if he wanted to file a civil action, he needed to do so within 90 days. *Id.* However, it is undisputed that Plaintiff did not file his complaint until October 27, 2006, over nine months after receiving the FAD. *Docket Entry 1; see Smith v.*

4

*Dalton ,* 971 F. Supp. 1, 3 (D.D.C. 1997) (date of filing of compliant established by official docket).

In his complaint, Plaintiff avers that "[o]n July 27, 2006, the EEO issued its Final Agency Decision on Plaintiff's counsel..." *Complaint at ¶10.* Plaintiff however, fails to mention that the Agency's OCRD provided his counsel, C. Sukari Hardnett, with a copy of the Plaintiff's FAD on July 28, 2006 (not July 27, 2006) only as a courtesy copy to her.[1] *Attachment 2.* The original FAD, dated January 17, 2006, had already been decided, written, and issued to the Plaintiff more than six months earlier. *Attachment 1.* Though Plaintiff's position is not entirely clear, he appears to be arguing that the 90 day time frame for filing a civil action should not have started to run until Ms. Hardnett, received a copy of the FAD. *Id.*

To the extent that this represents the Plaintiff's position, it is unsupported by the law. The Supreme Court has indicated that notice of a final action is considered received by a claimant when the notice reaches either a claimant or the claimant's attorney, whichever comes first. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (affirming Fifth Circuit's holding, which relied on that proposition); *see also Jackson v. Snow*, 2006 WL 212136 (D.D.C. 2006) ("It is well settled that notice of final action is "received" when the agency delivers its notice to a claimant or a claimant's attorney - whichever comes first."). Moreover, 29 C.F.R. §1614.605(e) provides that "[t]he Complainant shall at all times be responsible for proceeding with the complaint whether or not he or she has designated a representative." Plaintiff's time frame for filing a civil action began to run upon the Plaintiff's receipt of the FAD in January,

---

[1]      Apparently, there was some confusion or dispute as to whether or not the Plaintiff had ever actually designated Ms. Hardnett as her official attorney of record and if so, at what point was this accomplished. *See Attachment 2.*

2006 and expired no later than April, 2006.

Equitable tolling of the 90-day time limit is permissible only in narrow circumstances.  In *Irwin*, the Supreme Court explained that: "federal courts have typically extended equitable relief only sparingly.  . . .  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving [her] legal rights."  *Id*. at 96.  *See also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998) (equitable tolling is "exercised only in extraordinary and carefully circumscribed instances."); *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  *Cf. Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) (permitting equitable tolling).

This Court has routinely applied the ninety-day requirement to bar late-filed employment discrimination claims, absent compelling reasons for equitable tolling, even where the deadline was missed by a day or a few days.  *See, e.g., Smith v. Dalton*, 971 F. Supp. 1, 2-3 (D.D.C. 1997) (dismissing as untimely *pro se* Title VII complaint filed on the 91st day); *see also Tyler v. Henderson*, No. 00-60 (RWR), 2001 WL 194930 (D.D.C. Feb. 22, 2001) (dismissing as untimely Title VII claims filed on 94th day), *aff'd*, No. 01-5085, 2001 WL 1297501 (D.C. Cir. Sep. 12, 2001).  The Court of Appeals routinely affirms such dismissals.  *See, e.g., Tyler; Smith-Haynie* (affirming summary judgment where Title VII action was filed on the 92nd day).  Finally, it bears noting that the Supreme Court has also instructed:

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.  As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980), '[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'"

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).  In this case, Plaintiff missed

the ninety-day deadline for filing his civil action by more than six months. None of the factors supporting equitable tolling are apparent. Therefore, Plaintiff's case should be dismissed as untimely.

## II.    The CSRA Constitutes Plaintiff's Sole Remedy Regarding His Whistleblower Retaliation Claims

Even if this Court were to find Plaintiff's complaint timely, this Court lacks jurisdiction over his whistleblower retaliation claim because the Civil Service Reform Act ("CSRA"), 5 U.S.C. 1201 *et seq.*, provides the exclusive remedy for federal employees, such as Plaintiff, who allege retaliation as a result of whistleblowing. The CSRA was enacted in 1978 in order to deal with the employment claims of federal employees. Pub L. 95-454, 92 Stat. 1111 *et seq.* It is an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." *Bush v. Lucas*, 462 U.S. 367, 388 (1983). The CSRA is "a comprehensive system for reviewing personnel actions taken against federal employees." *USIA v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). Thus, the CSRA generally "precludes district courts from taking jurisdiction over CSRA-related claims." *Steadman v. Governor, United States Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) (citing *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 533 (1989)).

In 1989, Congress amended the CSRA by passing the Whistleblower Protection Act. Pub.L. 101-112, Sec. 3(a)(13), 103 Stat. 21. The amendment provided protection for federal employees who engage in whistleblowing, 5 U.S.C. 1213, and prohibited retaliation against employee whistleblowers. 5 U.S.C. 2302. These statutory provisions permit a federal employee to petition the Office of Special Counsel ("OSC") of the Merit Systems Protection Board

7

("MSPB") to evaluate claims of whistleblowing. *See* 5 U.S.C. 1213(b). If the federal employee is dissatisfied with the decision of the OSC, he may file an Individual Right of Action appeal with the MSPB. *See* 5 U.S.C. 1221. This comprehensive statutory scheme constitutes the sole remedy for federal employee whistleblowers. *See LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed. Cir. 1995); *Gardner v. United States*, 1999 WL 164412, *7 (D.D.C. Jan. 29, 1999)*; Daly v. Department of Energy,* 741 F. Supp. 202, 205 (D. Colo. 1990) ("Congress intended 5 U.S.C. 1213 and 2302 to provide the exclusive remedy for federal employees who suffer retaliation as a result of whistleblowing.").

This holding is consistent with precedent in this jurisdiction holding that the comprehensive nature of the CSRA precludes government employees from bringing *Bivens*-type actions against federal officials. *See Spagnola*, 859 F.2d at 228-29; *Hall v. Clinton*, 143 F. Supp.2d 1, 5 (D.D.C. 2001) ("Congress intended for the CSRA to be a comprehensive remedy for federal employees with individualized job grievances"); *Sculimbrene v. Reno*, 158 F. Supp. 2d 1, 7 (D.D.C. 2001) ("the rule that the CSRA is the exclusive remedy for aggrieved federal employees shall preclude Plaintiff from resorting to 42 U.S.C. 1985 and from bringing *Bivens* actions in order to recover against the individual defendants."). Accordingly, Plaintiff's remedies pursuant to the CSRA, particularly his right to petition the OSC to evaluate his claim of retribution for whistleblowing, preclude this Court from hearing his claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed with prejudice.

Respectfully submitted,

__/s/_____

JEFFREY A. TAYLOR, D.C. BAR # 498610

United States Attorney

\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

\_\_/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)



# Department of Energy
Washington, DC 20585

ҐJAN 1 7 2006

Xavier Harris,
  *Complainant,*

  v.

Samuel Bodman
Secretary,
Department of Energy
  *Agency.*

DOE Case Number: 03-4931-HQ

## FINAL AGENCY DECISION

### INTRODUCTION

In a formal EEO complaint filed on February 29, 2004, the Complainant alleged that officials of the Department of Energy (hereinafter "the Department") discriminated against him. The Department accepted the complaint and thereafter conducted an investigation.

On August 8, 2003, the Complainant contacted an EEO Counselor alleging discrimination on the bases of race and sex when he was not promoted and subjected to a hostile work environment, consisting of threats, demeaning comments and insults. When the EEO Counselor's efforts to resolve the complaint proved unsuccessful, on February 23, 2004, the EEO Counselor issued the Complainant a Notice of Final Interview and Notice of Right to File a Formal Complaint of Discrimination. Report of Investigation (ROI), Exhibit (Ex.) 1.

In his formal complaint, the Complainant alleged race,[1] sex and retaliation when he was (1) denied the opportunity of advancement; (2) treated differently from white, similarly situated individuals; (3) denied training and educational opportunities; (4) denied promotions and necessary support for promotions; and (5) retaliated against for reporting TC. ROI, Ex. 3. On April 13, 2004, the Department accepted for investigation only the facts pertaining to Issue 5; it dismissed the remaining issues as either too vague, overly broad or failing to state a claim. ROI, Ex. 5. The accepted issue was assigned for investigation and investigated between May 10 - September 24, 2004.

### CLAIMS

Whether the Complainant was subjected to discrimination on the bases of race (African American), sex (male) and retaliation (prior EEO complaints) when his Team Leader made racist comments creating a hostile work environment.

### SUMMARY OF FACTS

---

[1] The Complainant did not specify his race in his complaint; however, the EEO Counselor's report indicates that he is African American. ROI, Ex. 1.

 Printed with soy ink on recycled paper

**Representations of the Complainant (race, African American, sex, male; Utility System Repair Operator, Facilities Operations Team ) ROI, Ex. 6.**

The Complainant works as a Utility System Repair Operator on the Facilities Operations Team (Forrestal). Organizationally, the Complainant's team is part of the Department's Engineering and Facilities Management Group, Office of Operations, Office of Administration, Office of Management, Budget and Evaluation. ROI, Exhibit (Ex.) 8. His immediate supervisor during the time relevant here was TC, the General Foreman. ROI, Exs. 8, 10.[2] DN apparently served as the Complainant's foreman or team leader. ROI, Ex. 10.

The Complainant represents that as a result of his whistleblowing activities, TC was found to have engaged in theft and was subsequently convicted of income tax fraud and evasion. He alleges that TC, while being investigated for his illegal activity, stated that when he found out who told on him, he would sue for defamation of character. According to the Complainant, TC believed the Complainant was one of the whistleblowers and told the Complainant that he (TC) was keeping a file on him, as well as on all others whom TC suspected of whistleblowing. The Complainant continues that TC threatened to contract out their jobs.

The Complainant further represents that DN, who transferred from Germantown to Forrestal, was not originally aware of his whistleblowing activity, but brought his racism with him. He explains that DN was transferred to Forrestal because he called an African American employee a derogatory name. He adds that when DN came into the organization, all of his actions were supervisory in nature, and the staff was never informed that DN would be supervising them. Specifically, DN made or caused shift changes, directed other foremen to discipline the Complainant and his co-workers and directed the Complainant to take orders from contractors. He continues that DN also took overtime away from them, apparently because the Complainant did not want to work on weekends. The Complainant states that he and his co-workers complained to the union about DN and DB, Director, Office of Operations, advised them that DN would not be supervising them.

With respect to TC, the Complainant states that in approximately 1998 or 1999, a co-worker informed him that TC stated that he would never hire another "Black." He adds that TC continued his threat to contract out jobs, included racist remarks in memoranda, and essentially micro-managed him and his co-workers through paperwork.

The Complainant describes one incident in which he and a co-worker, WW, reported to CK's office to work on a computer. DN was present and CK apparently directed DN to tell the Complainant and WW what to do. Upon DN's completion of the instructions, three white contractors entered the room and, "[o]ut of the blue [DN] said sharply, 'do not let this happen again.'" The Complainant notes that he and WW did not know what DN was talking about, but concluded that DN wanted to give the three white contractors the impression that he (DN) was chastising the Complainant and WW.

Another incident involves DN paging the Complainant and, since the Complainant did not respond, DN wanted to check the Complainant's pager to see if the Complainant had received the page. The Complainant objected, stating that he would have responded to the page had he received it. DN stated that the Complainant had something in common with AS, MB and JJ [all non-employees but African American

---

[2] TC retired and was replaced by CK.

and prominent national figures] and that they were all full of it. The Complainant states that DN walked out before he could respond; however, he subsequently notified the union and complained to DB, Director, Office of Operations, who did nothing.

The Complainant also states that DN negatively treated black employees and refers to a Mr. A, a Forrestal building manager whose request for an assistant was denied.  Mr. A was sent to Germantown and replaced by a white male employee.[3]

The Complainant further represents that management would separate the black employees by requiring them to work individually, while white employees worked together.  The white employees also were allowed to work alternative work schedules, while the Complainant was denied the same privilege.

The Complainant asserts that his evaluations were generally consistent.[4]  He notes, however, that the white employees' evaluations usually were one level higher and they received higher bonuses.  He represents that unlike his white co-workers, the black employees never received the "employee of the month" award.  He describes an occasion when the crews worked to repair pipes that burst throughout the building. Although the black employees had worked for a month identifying the leaking valves, the white employees received the "employee of the month" award.  The Complainant states that he was never promoted, although he did his work and the work of his white co-workers

**Representations of DB (Caucasian male; Director, Office of Operations, Office of Administration), ROI, Ex. 7.**

DB states that he was unaware of the Complainant's prior EEO activity, but was aware of the Complainant contacting the union regarding TC's allegedly taking payoffs from contractors by having them perform work at his house.  Although the allegations regarding TC were referred to the Department's Inspector General (IG), the allegations were found to be false.

DB represents that the Complainant never informed him that he was being retaliated against.  He avers that after the IG's investigation, TC no longer directly interacted with employees and, consequently, there was no way TC could have retaliated against the Complainant or his co-workers.  He adds that CK eventually replaced TC as the General Foreman.

With respect to DN, DB states that although DN transferred to Forrestal as a supervisory grade employee, DN was not assigned any supervisory duties and was not a supervisor of the Complainant's.  DB acknowledges that there was a union meeting at which the employees raised concerns about DN's role in the unit and noted that DN, who was not in their chain of command,  was asking employees to do more preventive maintenance than they had done in the past.  DB told the employees to get use to DN's role but to let him know of any impropriety.

DB continues that DN subsequently moved into a supervisory role but not over the Complainant.

---

[3]  The facts concerning Mr. A are not clearly defined.

[4]  The record does not contain copies of the performance evaluations for any employees of the Engineering and Facilities Management Group.

He states that the Complainant never complained to him about any improper statements made by DN.

**No Other Relevant Statements & Documents**

The Complainant did not provide a rebuttal statement. Additionally, the record does not contain statements from TC, who retired from the Department, nor from DN, who apparently remains an employee of the Department. Similarly, WW, who has information relevant to the Complainant's allegations regarding comments DN made in the presence of the white contractors, also did not provide a statement.[5]

The workforce profile for the Department's Engineering and Facilities Management Group lists, among other things, the employees' dates of birth, but not their race and sex. Only the latter were accepted bases in this complaint.

**ANALYSIS AND FINDINGS**

**1. Statement of Applicable Law**

Although the Complainant alleged race, sex and retaliation in connection with certain issues, we do not view his claim as one of disparate treatment but more of a hostile work environment based on race and sex. For this reason, we will analyze his race and sex claims in accordance with the law applicable to hostile work environment. We will analyze his retaliation separately.

**Hostile Work Environment**

Harassment of an employee that would not occur but for the employee's race and sex is unlawful if it is sufficiently patterned or pervasive. Garretson v. Department of Veterans Affairs, EEOC Appeal No. 01945351 (April 4, 1996); McKinney v. Dole, 765 F.2d 1129, 1138-39 (D.C. Cir. 1985). The Equal Employment Opportunity Commission's (EEOC's) Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, EEOC Notice No. 915.002 (June 18, 1999) identifies two types of such harassment: (1) harassment that results in a tangible employment action; and (2) harassment that creates a hostile work environment. Complainant's claim will be evaluated as one of hostile work environment.

In order for harassment to be considered as conduct in violation of the regulations that EEOC enforces, it must be pervasive or severe enough to significantly and adversely alter the conditions of the victim's employment and create an abusive working environment. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred. Highlander v. K.F.C. National Management Co., 805 F.2d 644 (6th Cir. 1986). Unless the conduct is very severe, a single incident or group of isolated incidents will not be regarded as discriminatory harassment. Walker v. Ford Motor Co., 684 F.2d 1355, 1358 (11th Cir. 1982).

To successfully establish a claim of workplace harassment, the Complainant must show that (1) he is member of a statutorily protected group; (2) he was subjected to unwelcome verbal or physical conduct; (3) that the harassment of which he complains is based on his race and sex; (4) that the harassment affected a term or condition of

---

[5] We note that WW filed a complaint in his own behalf raising issues similar to the Complainant's. See DOE Case No. 03-4932-HQ.

employment and/or had the purpose or effect of unreasonably interfering with his work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) that there is a basis for imputing liability to the employer. Tuck v. Department of the Treasury, EEOC Appeal No. 01986481 (August 27, 2001), quoting Enforcement Guidance on Harris v. Forklift Sys., Inc., EEOC Notice No. 915.002 (March 8, 1994).

We now turn to the elements required for the Complainant to prevail on his claim.

## A. Whether the Complainant was a Member of a Statutorily Protected Group?

Complainant has established that he is a member of statutorily protected groups, specifically, race (African-American) and sex (male).

## B. Whether the Complainant was Subjected to Unwelcome Verbal or Physical Conduct?

The conduct Complainant complains of is verbal. As near as we can determine, the specific comments are those made by TC (that he would never hire another "black" employee) and DN (attempting to imply in the presence of white contractors that he was chastising the Complainant). Apart from the Complainant's representations, the record contains no evidence that TC and DN actually made the statements attributed to them, or affidavits from TC and DN in which they either admit or deny making the alleged statements. For purposes of our analysis, we will assume the statements were made.

## C. Whether the Harassment Was Based on Race and Sex?

With respect to the statement allegedly made by TC, it was clearly based on the Complainant's race. We note that it was made four to five years before the instant complaint was filed and was not heard by or specifically directed at the Complainant.

As for DN's alleged statement, it is unclear whether the statement, in and of itself, can be construed to refer to either the Complainant's race or sex. Indeed, the Complainant represents that DN intended to appear as though he was chastising the Complainant and WW, which DN could have done to bolster his reputation as a hard or difficult team leader/supervisor. Since we find no evidence to characterize DN's comment one way or another, we cannot conclude that it was based on race.

We further find that neither TC or DN made any comments based on the Complainant's sex.

## D. Whether the Harassment Affected a Term or Condition of Employment And/Or Had The Purpose or Effect of Unreasonably Interfering With Complainant's Work Environment And/Or Creating An Intimidating, Hostile, or Offensive Work Environment?

To the extent that racial harassment has been established, the harm caused by the alleged comment of TC—that he would never hire another "Black"— is not entirely clear, since the alleged comment was made in approximately 1998 or 1999.

Further, with respect to DN, the Complainant states that DN micro-managed his staff and required the Complainant to take orders from contractors, and denied the Complainant overtime and the right to work alternative work schedules. The latter clearly would constitute terms or conditions of the Complainant's employment. We note, however, that DB represents that DN did not exercise any supervisory

responsibility over the Complainant, and that there was a union meeting held to specifically clarify DN's role in the unit.

Nevertheless, we cannot conclude that the aforementioned incidents had the effect of unreasonably interfering with the Complainant's work environment or operating to create a hostile or offensive one. Initially, the Complainant has not established that the incidents he identifies were "pervasive or severe enough to significantly and adversely alter the conditions" of his employment. Litchfield v. Department of the Army, EEOC Appeal No. 01985553 (August 22, 2001). The incidents were isolated, apparently occurring over a period of time, and, when viewed as such, cannot be considered as discriminatory harassment. Id., quoting Walker v. Ford Motor Co., 684 F. 2d 1355, 1358 (11th Cir. 1982). Further, although the Complainant refers to a number of incidents that occurred within Forrestal, he simply has not established that the events occurred because of his race and sex. While TC may have said that he would never hire another Black employee, the consequential harm alleged by the Complainant resulted from DN's actions, not TC's.

## E. Is There a Basis for Imputing Liability To The Employer?

TC was the Complainant's supervisor until he retired and was replaced by CK, who is not an RMO herein. However, it seems that the Complainant's allegations of a present violation centers around DN. The record conflicts on DN's supervisory role: the Complainant asserts that DN acted as a supervisor while DB represents that DN had no supervisory responsibilities over the Complainant or his co-workers. For this reason, we will view DN as a co-worker.

Consequently, since the alleged harassment is perpetrated by a co-worker, liability can only be imputed to the Department "if it knew or should have known of the misconduct and failed to take immediate and appropriate corrective action." Tuck v. Department of the Treasury, supra. DB acknowledges that he was aware of the Complainant contacting the union regarding TC's allegedly taking payoffs from contractors, and the employees' and union's concerns about DN's supervisory role. However, DB states that he was never aware that the Complainant was being discriminated against. Although the Complainant states that he complained to DB about DN, it appears to have related to DN's supervisory role, and not instances of alleged discrimination. Indeed, the Complainant is quite vague about what he may have told DB, always prefacing his representation by stating that he complained to the union. We find no evidence that the Department knew or should have known that the Complainant was being harassed or otherwise discriminated against. Id. Accordingly, we find no basis for imputing liability to the Agency.

## Reprisal/Retaliation

In order to establish a prima facie case of retaliation or reprisal, the Complainant must generally demonstrate that (1) he engaged in a protected activity; (2) the agency official responsible for that action was aware of his protected EEO activity; (3) he was subjected to an adverse employment decision or action subsequent to or contemporaneously with the protected activity; and (4) the adverse action followed the protected activity within such a time frame (or in such a manner) as to give rise to an inference of retaliatory discrimination. Wrenn v. Gould, 808 F. 2d 493, 500 (6th Cir. 1987); McKenna v. Weinberger, 729 F. 2d 783, 790 (D.C. Cir. 1984); Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 435 F. Supp. 318, 324 (D. Mass. 1976), aff'd 545 F. 2d 222 (1st Cir. 1976). There must be a causal link between the protected activity and the adverse employment decision. Burris v. United Telephone of

Kansas, Inc., 683 F.2d 339, 343 (1st Cir. 1982); Gunther v. County of Washington, 623 F.2d 1303, 1314 (9th Cir. 1979), aff'd 452 U.S. 11 (1981).

Of course, the Department may rebut the Complainant's *prima facie* case, followed by the Complainant's evidence of pretext. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); *see also* Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24 (1978); Furnco Construction Corporation v. Waters, 438 U.S. 567 (1978). Teamsters v. U.S., 431 U.S. 324 (1977); Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Burdine, 450 U.S. 251. The ultimate burden of showing that management intentionally discriminated against the Complainant remains at all times with the Complainant. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711(1983). See also, *EEOC MD 110*, p. App. L4.

### Prima Facie Case

The Complainant has not established a *prima facie* case of retaliation. Whereas he may have been subjected to a series of actions he considers adverse, the Complainant has not shown that he filed a prior EEO complaint, participated as a witness in an EEO complaint, or opposed an unlawful discriminatory practice. *See* Leonard v. Department of the Army, EEOC Appeal No. 01994132 (November 5, 1999).

Rather, the Complainant describes his prior EEO activity as whistleblowing that uncovered a theft by his then supervisor, TC, who was charged and convicted of income tax fraud. He adds that TC threatened to get those whom he suspected of reporting him, including the Complainant. The Complainant has not shown this to be EEO activity as contemplated by applicable statutes and regulations. Although contacting an IG may be sufficient to bring the matter within the scope of the anti-reprisal provisions of Title VII, the practices complained of generally have been construed to be prohibited by Title VII. Leonard, *supra*. Here, the Complainant apparently blew the whistle on supervisory theft. Accordingly, the Complainant has not shown that he engaged in prior EEO activity and, thus, fails to satisfy this element of his *prima facie* case.

Nevertheless, we will continue our analysis despite the deficiencies in the Complainant's *prima facie* evidence. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983); Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

### Management's Response

The Department has articulated legitimate, non-discriminatory reasons for the challenged action. It has done so through the testimony of DB, who testified that after the IG's investigation, TC was removed from having contact with all employees and, consequently, there was no way that TC could have discriminated against the Complainant. As we noted *supra*, the Complainant has not established facts suggesting a contrary view. Further, DB states that the Complainant never informed him that he was retaliated against. Additionally, as for DN, DB represents that, while DN occasionally filled in on shift work, he never assumed a supervisory role over the Complainant.

Accordingly, the Department has articulated reasons explaining the challenged actions. Thus, to prevail, the Complainant must prove that these explanations are a pretext to mask discriminatory *animus*.

## Pretext

The Complainant has not established a causal link between his protected activity and the actions he complains about. Burris v. United Telephone of Kansas, Inc., 683 F.2d 339, 343 (1st Cir. 1982); Gunther v. County of Washington, 623 F.2d 1303, 1314 (9th Cir. 1979), aff'd 452 U.S. 11 (1981). Assuming that TC averred that he would not hire another black employee, the Complainant has neither argued nor established the consequential harm that flowed from the statement. The Complainant already was an "employee" so being "hired" clearly was not an issue with him. Further, as DB states, TC's supervisory role over employees was removed and he subsequently retired. The Complainant has not shown DB's representations to be untrue.

### The Dismissed Issues

In his complaint, the Complainant alleged that he was denied training, educational and promotional opportunities. As we stated in the notice of April 13, 2005 dismissing these issues:

> A careful review of the Counselor's Report and the formal complaint fails to identify or establish that you were denied any available training or educational opportunities. In addition, neither the complaint nor Counselor Report evidences that you actually requested any training or educational opportunities. You also fail to establish specific promotional opportunities that you allege were discriminatory and you have also not identified any position that was non-competitively filled without providing you an opportunity to compete for it. In this connection, you request that a review be conducted to identify any of these alleged missed opportunities.

> The above allegations must be dismissed since they are too vague and overly broad, and fail to state a claim upon which relief can be granted. In order to state a claim cognizable under regulations of the U.S. Equal Employment Opportunity Commission (EEOC), you must allege a specific injury to be entitled to relief. In this connection, you have not shown how you were harmed with regard to a term, condition or privilege of employment. See Patania v. Department of the Army, EEOC Appeal Number 01842757 (1987).

Accordingly, these issues are hereby DISMISSED.

## VII.  CONCLUSION

The Complainant has not established the elements necessary to prevail on his claim of a hostile work environment.

Similarly, the Complainant has not established  prima facie cases of race or of retaliation with respect to the accepted issue. Assuming the existence of prima facie case, the Agency has articulated legitimate, non-discriminatory reasons for challenged action. We further find that Complainant has not established the Agency's articulated reasons to be pretext.

Finally, the Complainant's allegations that he was denied training, educational and promotional opportunities are dismissed for being too vague and overly broad and for failing to state a claim upon which relief can be granted.

## STATEMENT OF RIGHTS

This is the final decision of the Department of Energy with respect to your complaint. If you are dissatisfied with this decision, you may file a notice of appeal with the EEOC **WITHIN 30 CALENDAR DAYS** OF THE DATE THAT YOU RECEIVE THIS DECISION. The appeal should be addressed to the U. S. Equal Employment Opportunity Commission, Office of Federal Operations, P. O. Box 19848, Washington, DC 20036 or hand-delivered to the Office of Federal Operations at 1801 L Street, NW, Washington, DC 20507. In the alternative, you may send a facsimile to (202) 663-7022.

Any statement in support of the appeal must be submitted to the EEOC, with a copy to this office, within **30 calendar days** of the filing of the notice of appeal. The Commission may exercise its discretion to extend the time limit and accept the appeal if it is not submitted within the prescribed **30 calendar days**, based upon a written showing that you were not notified of the prescribed time limit and were not otherwise aware of it, or that circumstances beyond your control prevented filing the notice of appeal within the prescribed time limit. **A copy of EEOC's appeal form is attached to this decision.**

If you elect not to appeal to the EEOC, you have the right to file a civil action in an appropriate United States District Court **WITHIN 90 CALENDAR DAYS** of the date that you receive this decision. A civil action may also be filed any time **AFTER 180 CALENDAR DAYS** from the date of filing an appeal with the EEOC, if a final decision has not been issued by the EEOC's Office of Federal Operations. The limitations period for filing a civil action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. (ADEA) may differ from the period set out for the filing of civil actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and the Rehabilitation Act of 1973, 29 U.S.C. §791. You may be foreclosed from filing a civil action on any claim brought under the ADEA if you fail to file within the limitations period applied by the Court in the jurisdiction in which your action is filed.

If you file a civil action, **YOU MUST NAME AS THE DEFENDANT IN THE COMPLAINT THE PERSON WHO IS THE OFFICIAL HEAD OF THE DEPARTMENT OF ENERGY, IDENTIFYING THAT PERSON BY HIS OR HER FULL NAME AND OFFICIAL TITLE.** Failure to do so may result in dismissal of the case. "Department" means the national organization, not the local office, facility or department against which you may have filed your complaint. In your case, you must name Mr. Samuel Bodman, Secretary, U. S. Department of Energy, 1000 Independence Avenue, SW, Washington, DC 20585. **Filing a civil action will terminate the administrative processing of your complaint.**

You are further notified that if you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the civil action without payment of fees, costs, or other security. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. **The grant or denial of the request is within the**

**sole discretion of the court.** Filing a request for an attorney does not extend the time limit in which to file a civil action.

Sincerely,

William A. Lewis, Jr.
Acting Deputy Director
Office of Civil Rights and Diversity

Attachment: *EEOC Form 573*

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Xavier Harris
1120 ~~Linden Avenue~~
Ta~~koma Park, MD~~
~~20912.~~

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Lynne Harris_   ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
_Lynne Harris_                      1/20/06

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7002 0510 0002 2965 0467

PS Form **3811**, August 2001         Domestic Return Receipt         102595-02-M-0835



# Department of Energy
### Washington, DC 20585

July 28, 2006

<u>Certified</u>
Ms. C. Sukari Hardnett, Esq.
Law Offices
Hardnett & Associates
1111 Bonifant Street
Silver Spring, MD 20910

Dear Ms. Hardnett:

This is in response to your letter dated July 10, 2006, to Mr. Frank J. Vaccarella and received by the Office of Civil Rights and Diversity on July 19, 2006. In your letter, you contend that you did not receive Final Agency Decisions (FAD's) for Complainant's Xavier Harris and Kenneth Mock despite the fact that you were the representative in this matter. You further contend that, because more than 180 days have passed since the filing of these complaints, you are putting the agency on notice of the Complainants' intent to file suit.

The record shows that Complainants William Whittington, Kenneth Mock and Xavier Harris raised similar claims of discrimination. Those claims were investigated between May 10 and September 24, 2004, and all three individuals were issued FAD's on January 17, 2006. The record further shows that the FAD's were received by the Complainants on or about January 20, 2006. The FAD's contained appeal rights to the Equal Employment Opportunity Commission. The record establishes that no appeals were filed in those cases.

You assert that, as attorney of record, you were entitled to receive service of the FAD's for Messrs. Mock and Harris. (The record shows that you received a copy of the FAD for Mr. Whittington.) We note that you previously sent a letter to this office, on April 23, 2006, making a similar assertion. In our response on June 2, 2006, (copy enclosed), we stated that, because the Complainants had not notified this office that you were their representative, you were not the official attorney of record; therefore, the FAD's were not sent to you. However, given your current request, we are pleased to provide you with the enclosed courtesy copies of the FAD's for Messrs. Mock and Whittington.

I hope this has been responsive to your concerns.  If you have any questions, please contact Mr. Vaccarella of my staff at 202-586-8212.

Sincerely,

Poli A. Marmolejos
Director
Office of Civil Rights and Diversity

Enclosures:
- Letter of June 2, 2006
- Final Agency Decision: Kenneth Mock
- Final Agency Decision: Xavier Harris

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
XAVIER HARRIS,                          )
                                        )
       Plaintiff,                        )
                                        )
       v.                                )      Civil Action No. 1:06CV01848 (JR)
                                        )
SAMUEL W. BODMAN,                       )
SECRETARY OF ENERGY                     )
                                        )
       Defendants.                       )
_____)

## <u>ORDER</u>

      Upon consideration of Defendants' Motion to Dismiss, the relevant law, and the entire record herein, it is this _____ day of _____, 2007

      ORDERED that Defendants' Motion to Dismiss is GRANTED, and it is

      Further ORDERED that this case is DISMISSED WITH PREJUDICE.

      This is a final appealable order.

      SO ORDERED.


                                    _____
                                      UNITED STATES DISTRICT COURT JUDGE