UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
XAVIER HARRIS,                      )
                                    )
        Plaintiff,                  )
                                    )
  v.                                )   Civil Action No. 1:06CV01848 (JR)
                                    )
SAMUEL W. BODMAN,                   )
SECRETARY OF ENERGY                 )
                                    )
        Defendants.                 )
_____)

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Plaintiff's arguments in opposition to the Defendant's motion to dismiss are without merit.[1]  For these reasons, as discussed more fully below, Defendant's motion should be granted and Plaintiff's complaint dismissed with prejudice.

**I.      Plaintiff Failed to Timely File the Civil Action by Over Nine Months**

Plaintiff argues that the 90-day time frame for filing a civil action did not begin to run until his designated representative received a copy, *from the Agency*, of the Final Agency

---

[1] Defendant notes that Plaintiff's opposition to the motion to dismiss is untimely.  Pursuant to D.D.C. Local Rule 7(b), Plaintiff was required to file his opposition within eleven days (plus three days for mailing) after service of the March 30, 2007 motion. *LCvR 7(b); see Docket Entry 7*.  As such, Plaintiff was required to file his opposition by no later than April 13, 2007.  *See Fed. R. Civ. P. 6*.  However, Plaintiff did not file his opposition until April 16, 2007.  *Docket Entry 8*.  Plaintiff did not move for leave to file out of time, nor did he contact the undersigned counsel to request additional time, nor did he set forth any reasons for his untimely filing.  As such, the Court may treat the motion to dismiss as conceded.  *LCvR 7(b); see also Federal Deposit Insurance Corporation v. Bender*, 127 F.3d 58, 68 (D.C.Cir. 1997) (holding that the discretion to enforce Rule 7(b) "lies wholly with the district court.").

Decision (FAD) on July 28, 2006.[2] *Pl. Opp.* at 2-4. In support of this position, Plaintiff does not cite any actual authority, but, instead only argues that the cases cited in the Defendant's motion, *Jackson v. Snow*, 2006 WL 212136 (D.D.C. 2006) and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), involve instances when the courts "calculated the deadline for filing a civil action from the date that the attorney (and not the claimant) received the right to sue notice." *Pl. Opp.* at 3. Though Plaintiff is correct about the fact pattern in these cases, they do not stand for the proposition that the time frame for filing a civil action is only triggered by the actual receipt of the final notice by a claimant's designated representative, irrespective of when the claimant received such notice.

Unlike the instant case, in both *Jackson* and *Irwin,* the claimants' attorneys received the "right to sue" notices *prior* to the claimants' receipt of such notices. In *Jackson*, the claimant's attorney received notice of the final action nearly one month prior to the claimant's receipt of the final action. 2006 WL 212136 at *2. Similarly, in *Irwin v. Department of Veterans Affairs*, the claimant's attorney received the final action approximately two weeks prior to the claimant's receipt of the final action. 489 U.S. at 91. In discussing what constitutes receipt of a final action, the *Jackson* court explicitly held:

> It is well settled that notice of final action is "received" when the agency delivers its notice to a claimant or a claimant's attorney - *whichever comes first*.
>
> *Jackson,* 2006 WL 212136 at *3 (emphasis added).

---

[2]   Interestingly, at no time does Plaintiff allege that his representative first learned of the FAD on July 28, 2006. Instead, Plaintiff only alleges that "the right to sue notice was not served upon [his] attorney until" that date. *Pl. Opp.* at 2. Plaintiff does not dispute that he received the FAD on January 20, 2006 and is noticeably silent on whether or not he apprized his representative of the FAD at any point prior to July 28, 2006.

Moreover, in *Simpkins v. Washington Metropolitan Area Transit Authority*, 2 F.Supp.2d 52, 57-58 (D.D.C. 1998), this court found that the 90 day period began to run on the date that the Postal Service left notice for the plaintiff, who was represented by an attorney, of the right to sue letter. *See also Rowe v. Sullivan,* 967 F.2d 186, 191 (5th Cir.1992) (receipt of agency determination by plaintiff's wife triggered limitations period). Contrary to Plaintiff's argument, the deadline for filing a civil action began to run from the date that the Plaintiff received the FAD.

Notably, Plaintiff does not dispute that he received the FAD on January 20, 2007 and that the FAD set forth his appeal rights and the corresponding deadlines for exercising those appeal rights. *Def. Mot. to Dismiss, Att. 1*. Furthermore, the record demonstrates that the Defendant advised the Plaintiff's representative in a June 2, 2006 letter that a FAD had been mailed to the Plaintiff on January 17, 2006. *Attachment 1*. Thus, even in the unlikely event that the Plaintiff did not apprize his representative of the FAD when he received it on January 20, 2006, Plaintiff's representative had notice of the FAD on or around June 2, 2006. Yet inexplicably, Plaintiff still waited until October 27, 2006 to file his civil action, over nine months after he first received it in January, 2006 and nearly five months after his representative was apprized of it by the Agency in June, 2006.

Plaintiff argues that "equitable tolling is warranted when a party has designated a representative ... and the EEOC fails to serve his representative timely notice.. " *Pl. Opp. at 4*. However, Defendant submits that equitable tolling clearly is unwarranted in this case. As discussed above, Plaintiff does not dispute that he received the FAD on January 20, 2006. Assuming that Plaintiff did not apprize his representative of the FAD, *see fn 1*, Plaintiff proffers no explanation at all, let alone a reasonable one, for his failure to do so. He does not allege that

he was unable to contact his representative, nor does he allege that he did not comprehend the FAD and appreciate the time frames for filing an appeal. The record further demonstrates that his representative was made aware of the FAD by the Agency on or around June 2, 2006. Under these circumstances, Plaintiff has clearly failed to set forth any basis for equitable tolling.

## II.     Plaintiff's False Claims Act ("FCA") Retaliation Claim Must be Dismissed

Plaintiff's arguments regarding his whistleblower reprisal claim, pursuant to the Whistleblower Protection Act, 5 U.S.C. § 2302, are far from clear. Plaintiff does not dispute that the Civil Service Reform Act ("CSRA") sets forth the administrative remedies available to him (i.e. Office of Special Counsel and individual right of action appeal with the Merit Systems Protection Board) with regards to his claims. Instead, Plaintiff now appears to be claiming that in addition to the Whistleblower Protection Act, he may also bring the same whistleblower reprisal claim under the "whistleblower provisions of the False Claims Act ("FCA")."[3] *Pl. Opp. at 4*. Plaintiff's FCA claim is not appropriate and should also be dismissed.

---

[3]     The False Claims Act, 31 U.S.C. §§ 3729-3733, imposes a civil penalty and treble damages on any individual who, *inter alia,* "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval." *Id. at § 3729(a)*. The FCA permits a private party - a "relator"- to initiate a *qui tam* action on behalf of the government. *Id. at § 3730(b)*. The government has the option of taking over the suit or leaving it to the relator to prosecute. *Id*. In either case, the relator is entitled to a percentage of any recovery resulting from a successful suit. *Id. at § 3730(d)(1)-(2)*. The FCA also contains a "whistleblower" protection provision which can give rise to a retaliation claim. The statute provides that:

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee ... in furtherance of an action under this section ... shall be entitled to all relief necessary to make the employee whole.

*Id. at § 3730(h).*

As discussed in the Defendant's motion to dismiss, the comprehensive statutory scheme of the CSRA, which includes the Whistleblower Protection Act, constitutes the sole remedy for federal employee whistleblowers. *See LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed. Cir. 1995); *Gardner v. United States*, 1999 WL 164412, *7 (D.D.C. Jan. 29, 1999)*; Daly v. Department of Energy,* 741 F. Supp. 202, 205 (D. Colo. 1990) ("Congress intended 5 U.S.C. 1213 and 2302 to provide the exclusive remedy for federal employees who suffer retaliation as a result of whistleblowing."). In an effort to rebut this argument, Plaintiff claims that in *LeBlanc* at 1028, the court "recognized that the FCA may provide coverage to some federal employees." *Pl. Opp. at 4*. Though the precise thrust of Plaintiff's argument is confusing, an examination of *LeBlanc* reveals no such position. On the contrary, in that case, the Federal Circuit clearly states:

> We see no clear statement in section 3730(h) of a congressional intent to create a remedy for federal employees in addition to those provided in the CSRA, and we decline to create one by implication.
>
> *LeBlanc*, 50 F.3d at 1030.

With regard to Plaintiff's whistleblowing reprisal claim, the CSRA provides the sole remedy for redress.

Moreover, even assuming that Plaintiff could demonstrate a legal right to pursue his whistleblowing reprisal claim outside of the CSRA, Plaintiff improperly raises this FCA retaliation claim for the first time in his opposition. An examination of Plaintiff's complaint reveals absolutely no reference or citation to the FCA. Rather, Plaintiff stated that his second cause of action concerns "[v]iolations of the Whistleblower Act." *Compl. at p. 5*. To the extent that Plaintiff wishes to now amend his complaint, he should be required to comply with Fed. R. Civ. P. 15 and should not be permitted to add new claims through an opposition to a motion to

5

dismiss. *See, e.g. Quarles v. General Investment & Development Co.*, 260 F.Supp.2d 1, 13 (D.D.C. 2003) ("...whether plaintiffs can amend their complaint through a statement in their opposition is a dubious proposition at best). However, amendment of the complaint in this case would be futile.

Plaintiff's FCA retaliation claim would also fail because he cannot demonstrate that the FCA waives sovereign immunity against a federal agency. A waiver of the United States' sovereign immunity must be unequivocally expressed in statutory text and will not be implied. *Settles v. United States Parole Comm'n*, 429 F.3d 1098 (D.C. Cir. 2005) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 37 (1992) and *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Consent to a particular remedy must be unambiguous as well. *Department of Army v. Federal Labor Relations Authority*, 56 F.3d 273, 277 (D.C. Cir. 1995). If ambiguous, statutes must be construed in favor of immunity. *See United States v. Williams*, 514 U.S. 527, 531 (1995). Plaintiff has not pointed to any statutory language that evidences a Congressional intent to subject the federal government to suit under the FCA. In fact, in *Galvan v. Federal Prison Industries, Inc.*, 199 F.3d 461, 467-68 (D.C. Cir. 1999), the D.C. Circuit Court specifically found that the FCA *does not* contain any such waiver of sovereign immunity. *See also Leblanc*, 50 F.3d at 1030 (finding that plaintiff did not direct the court "to any statutory language that even hints that Congress intended to subject the federal government to suit under section 3730(h)).

## CONCLUSION

For the foregoing reasons and the arguments set forth in the motion to dismiss, Plaintiff's complaint should be dismissed with prejudice.

        Respectfully submitted,

        __/s/_____
        JEFFREY A. TAYLOR, D.C. BAR # 498610
        United States Attorney

        __/s/_____
        RUDOLPH CONTRERAS, D.C. BAR # 434122
        Assistant United States Attorney

        __/s/_____
        QUAN K. LUONG
        Special Assistant United States Attorney
        555 Fourth Street, N.W., Room E-4417
        Washington, D.C. 20530
        (202) 514-9150 (telephone)
        (202) 514-8780 (facsimile)



# Department of Energy
Washington, DC 20585

**June 2, 2006**

**Certified**
Ms. C. Sukari Hardnett, Esq.
Law Ofices
Hardnett & Associates
1111 Bonifant Street
Silver Spring, MD 20910

Dear Ms. Hardnett:

This is in response to your letter dated April 23, 2006, to Mr. Frank J. Vaccarell: nd received by the Office of Civil Rights and Diversity on May 10, 2006. In your let , you contend that the Report of Investigation (ROI) on Complainant's William Whittir ɔn, Kenneth Mock and Xavier Harris, was completed on September 24, 2004, but y did not receive a copy. You further contend that on March 10, 2005, you requestec ɔpies of the ROIs and received them on May 5, 2005, without any "Statement of Righ ' You state that you would still like to request a hearing with the EEOC.

You also assert in your letter that you received a Final Agency Decision (FAD) f Mr. William Whittington dated January 17, 2006, on March 23, 2006. In this conne( ɔn, you state that, "The instructions on the FAD states that the Complainant had nil y days from the date of receiving the FAD to file suit. It further states that the Complainant had thirty days from the date of the FAD to Appeal to the EEOC. , you are aware, the EEOC presumption is that the MAIL is received within five days 1 n the date it was mailed. Obviously, it is not possible to make any of these deadlines o appeal or file suit."

Finally, you contend that you did not receive FADs for Mr. Mock or Mr. Harris in violation of EEOC Regulation 29 CFR Section 1614.605(d) which "provides that ien a complainant designates an attorney as representative, service of documents an decisions on the complainant shall be made on the attorney, and time frames fc receipt of materials by the complainant shall be computed from the receipt by th attorney."

Our records show that the "Statement of Rights" was given to the Complainants ו February 23, 2004, at the conclusion of counseling. A "Processing Election For (the right to have a hearing or FAD) accompanies a ROI. The ROI and Processing I ction Form was sent to the Complainants and to you on or about March 3, 2005, and received by the Complainants on or about March 10, 2005. As a courtesy, the f is and Processing Election Forms were resent to you by special messenger on Ma ɔ, 2005. Although the record shows that you and Messrs. Mock, Harris and Whitti ton were sent a Processing Election Form more than one year ago, there was no re ɔnse

Printed with soy ink on recycled paper

requesting either a final agency decision or a hearing. EEOC Regulation 29 CR
Section 1614.110(b) states, in pertinent part, that the agency shall issue a fina decision
within 60 days of the end of the 30-day period for the complainant to request earing
or an immediate final decision where the complainant has not requested either
hearing or a final agency decision. Therefore, FADs were issued on January 2006,
and received by the Complainants' on or about January 20, 2006, with appeal hts to
the Equal Employment Opportunity Commission. The record shows that no aals
were filed in those cases.

With regard to your assertion that the clock begins to run for filing an appeal o ivil
action five days from the mailing of "Mr. Whittington's FAD", is an erroneous
interpretation of the regulations. The clock begins to run upon receipt. Theref, you
have 90 days from March 23, 2006, to file a civil action and had 30 days to file
appeal with the EEOC.

Finally, you contend that you did not receive the FADs for Mr. Mock and Mr. His
since you were the attorney of record. We disagree. The record shows that ywere
generally sent companion copies of correspondence even though you were noe
official attorney of record. Although you claimed to be the representative, the
regulations require that the <u>Complainant</u> shall notify the agency, in writing, of tname,
address and telephone number of their representative. The record further sho that
neither Messrs. Mock, Harris or Whittington notified the agency, in writing, that u
were the representative of record. See, generally, 29 CFR Section 1614.605. d
even where the record evidences a Complainant's written notification of represtative,
the Commission has noted that it is not a *per se* violation of Section 1614.605(when
the agency does not serve documents on the Complainant's attorney. D'Avanv.
<u>Secretary of Transportation</u>, 01964739 (1988). To this end, the Complainant sll at all
times be responsible for proceeding with the complaint whether or not he or sh as
designated a representative. 29 CFR Section 1614.605(e).

I hope this has been responsive to your concerns. If you have any questions, ase
contact Mr. Vaccarella of my staff at 202-586-8212.

Sincerely,

Poli A. Marmolejos
Director
Office of Civil Rights and Divers